McNUTT LAW GROUP LLP
SCOTT H. McNUTT (CSBN 104696)
SHANE J. MOSES (CSBN 250533)
MARIANNE M. DICKSON (CSBN 249737)
188 The Embarcadero, Suite 800
San Francisco, California 94105
Telephone: (415) 995-8475
Facsimile: (415) 995-8487

MICHAEL ST. JAMES (CSBN) 95653
ST. JAMES LAW, P.C.
155 Montgomery Street, Ste. 1004
San Francisco CA 94104
Telephone: (415) 391-7566
Facsimile: (415) 391-7568

Proposed Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>Round Table Pizza Inc.,<br><br>    Debtor. | Case Nos.   11-41431 RLE<br>                11-41432 RLE<br>                11-41433 RLE<br>                11-41434 RLE<br><br>Chapter 11 |
| In re<br><br>Round Table Development Co.,<br><br>    Debtor. | **MOTION FOR ORDER AUTHORIZING JOINT ADMINISTRATION OF CHAPTER 11 CASES**<br><br>Judge: Hon. Roger Efremsky<br>Date: February 11, 2011<br>Time: 10:30 a.m.<br>Place: United States Bankruptcy Court<br>         1300 Clay Street<br>         Oakland, California |
| In re<br><br>The Round Table Franchise Corp.,<br><br>    Debtor. | |
| In re<br><br>Round Table Pizza Nevada LLC,<br><br>    Debtor. | |

## I. INTRODUCTION

Round Table Pizza, Inc., Round Table Franchise Corporation, Round Table Development Company, and Round Table Pizza of Nevada, LLC, the joint debtors and debtors-in-possession in the above captioned Chapter 11 reorganization cases (collectively "Round Table" or the "Debtor"), hereby jointly move the Court for an order authorizing joint administration of their Chapter 11 estates (the "Joint Administration Motion").

This Joint Administration Motion is based on the Memorandum of Points and Authorities set forth herein, the NOTICE OF HEARING ON FIRST DAY MOTIONS (the "Omnibus Notice"), the DECLARATION OF J. ROBERT MCCOURT IN SUPPORT OF FIRST DAY MOTIONS (the "Omnibus Declaration") filed concurrently herewith and incorporated herein by reference, the pleadings and papers on file herein, and upon such oral and documentary evidence as may be presented at the hearing on the Joint Administration Motion. By a separate application, Debtor has requested an order shortening time for notice and setting a hearing on this matter and other "first day" motions on an expedited basis.

## II. JURISDICTION

On February 9, 2011 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California.

The Court has jurisdiction over this case and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409(a).

The statutory bases for the relief requested herein are section 105 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 1015.

## III. FACTS

**A. Background**

Round Table's first restaurant opened in Menlo Park, California in 1959. Over the past 50 years, Round Table has grown to dominate the Northern California market for pizza, to become a major West Coast chain, with nearly 500 stores in seven States, and to engage in international

franchise development.

During the same period, Round Table diversified from acting exclusively as a franchisor to also operating company owned stores, ultimately acquiring and developing 140 company-owned stores and swelling its employee base from 70 to a peak of over 3,000 employees.

During the decade prior to the Great Recession, Round Table enjoyed tremendous growth. Between 1997 and 2006, revenues grew from $15 million to $120 million per year, and operating profits grew from $4.3 million to $10.5 million. In February of 2007, Round Table obtained a new credit facility. Although Round Table restructured its business to adjust to the Great Recession, the terms of the credit facility could not be met by that restructured business. Efforts to renegotiate the terms of the credit facility were unsuccessful.

A fuller presentation of Round Table's background, the circumstances which led to the instant Chapter 11 filing, and Round Table's expectations regarding its reorganization is set forth in the Omnibus Declaration.

In connection with Round Table's Employee Stock Option Plan (the "ESOP"), an independent appraiser valued Round Table at $45 million approximately one year ago. Round Table engaged in marketing efforts immediately prior to the Petition Date, which confirmed a value in that range. General Electric Capital Corporation ("GECC") / Prudential Insurance of America ("Prudential") are owed $30 million in the aggregate, suggesting that Round Table should generate a significant recovery to creditors, and potentially a recovery to the ESOP which holds its equity as well.

**B.     Intended Reorganization**

There are two core aspects to Round Table's business: acting as a franchisor to independent third party owner-operators, and operating company-owned stores.

There are currently 355 franchised stores, with 148 franchisees. The franchise base is highly diversified: 91% of the franchisees own five stores or less, and only two franchisees own 20 to 25 stores. Management believes that the franchise segment of Round Table's business is sound, produces stable profits and does not require material reorganization.

Round Table operates 128 company-owned stores. Although most of them are profitable,

a number of the stores have been unable to operate profitably in the current economic environment, generating significant losses. Over the first four to six months of its Chapter 11 case, Round Table intends to close unprofitable stores and to renegotiate leases with respect to its marginal stores. Within four to six months, Round Table expects that its remaining base of company-owned stores will be stable and profitable.

Round Table expects to have maximized the value of the chain through store closings and lease renegotiations by the conclusion of the initial phase of its reorganization, after which it intends to complete its reorganization by embarking on one of two paths.

If it appears that an appropriate value can be realized for the benefit of all of its constituencies through a sale, Round Table is amenable to engaging in that process.

On the other hand, if problems in the economy and the credit industry make it impossible to realize an appropriate value for the company this year, Round Table will propose a Plan of Reorganization which restructures its debt so that it can operate successfully for a period of perhaps five years, by the conclusion of which it would expect to sell the business or refinance the debt.

For either reorganization to succeed, the loyalty and support of Round Table's employees will be essential.

**C.  Joint Management And Administration of The Companies**

Formally, Round Table consists of four separate entities: Round Table Pizza, Inc., the parent corporation, and two subsidiaries, The Round Table Franchise Corporation, which handles all matters relating to franchises, and Round Table Development Company, which handles all matters relating to company-owned stores; and Round Table Pizza Nevada LLC, which is wholly owned by Round Table Development Company.

As a practical matter, the Debtors have always operated and presented themselves as a single, unitary business. For example:

  (a)  Creditors have consistently been provided only consolidated financial statements.

  (b)  All internal financial statements are prepared on a consolidated basis.

(c) All cash is swept to a single account held by the parent corporation, and all disbursements are made from the parent's accounts.

(d) All three corporations file tax returns as a consolidated group. As a single-member LLC, Round Table Pizza Nevada LLC is not treated as a separate taxable entity for federal tax purposes.

(e) Separate financial statements are prepared for only The Round Table Franchise Corporation, only annually, only by Round Table's accountants, and only so as to comply with FTC requirements. The separate annual financial statements for The Round Table Franchise Corporation are not provided to creditors, and they include the following Note:

> Transactions with Parent and Affiliates:
>
> Substantially all of the Company's cash receipts and disbursements are managed by the Parent. Under this arrangement, all cash receipts for the franchise fees are transferred to the Parent and all Company expenses are funded by the Parent.

Although Round Table maintains bookkeeping information so that separate financial statements can be prepared for each entity, Round Table ordinarily does not do so. Round Table's internal financial systems and reporting are ordinarily handled on a consolidated basis.

It would be extremely burdensome and expensive for the company to attempt to prepare separate financial statements and reports internally for each entity on a current basis for the first time post-bankruptcy. Additionally, it would be extremely expensive and inefficient for Round Table to separate the cash management of the three entities (authorization to maintain Round Table cash management system in its current form is sought by a separate motion).

On the other hand, joint administration would not prejudice the creditors of any of the entities. The books and records are sufficient to allow preparation of separate financial statements if it would serve a constructive purpose. Further, the substantial reduction in administrative expense that joint administration will provide will be a significant benefit to creditors.

1   Round Table therefore requests that it be permitted to continue to prepare all financial
2   reports, including monthly operating reports, on a consolidated basis pending further order of the
3   Court.

4   **D.     Notice**

5   If this Joint Administration Motion is approved, a notice, substantially similar to that
6   attached hereto as **Exhibit A**, will be sent to all creditors and will be filed in each of the Debtors'
7   cases.  Once jointly administered, Debtors propose to file pleadings only in the Round Table
8   Pizza, Inc. case court file.  In all other court files for the related cases, creditors and parties-in-
9   interest will be directed to the Round Table Pizza, Inc. file to locate all pleadings filed subsequent
10  to the date on which the Court enters an order authorizing the joint administration of these four
11  cases.

## IV.  RELIEF REQUESTED

13  By this Motion, Round Table requests that the Court authorize the joint administration of
14  the Debtors' chapter 11 cases and approve the following procedures. Round Table requests that
15  the court authorize the Clerk of Court to maintain a joint pleadings docket under the case number
16  assigned to Round Table Pizza, Inc. which shall be designated as the single pleadings docket for
17  all pleadings relating to any of the Debtors' chapter 11 cases. Round Table further requests that
18  absent further order of this Court, the claims registers in these cases shall be maintained separately
19  for each Debtor entity by the Clerk of Court. Round Table further requests that the court approve
20  use of a combined caption in substantially the form used hereon, and that Round Table and other
21  parties be authorized to combine notices to the Debtors' creditors. Round Table further requests
22  authorization for joint handling of all other administrative matters as appropriate, including joint
23  financial reporting, and joint and several liability for administrative expenses.

24  The relief requested herein is limited to joint administration. Nothing contained in this
25  Motion is intended to compel substantive consolidation of the Debtors' estates.  The requested
26  relief will thus not prejudice any entity's substantive rights and will result in no conflicts. If
27  substantive consolidation of the estates is later warranted, Round Table will move the Court
28  separately for such relief.

## V. BASIS FOR RELIEF

**A.    Legal Authority**

Round Table Pizza, Inc., The Round Table Franchise Corporation, Round Table Development Company, and Round Table Pizza Nevada LLC request an order authorizing joint of administration of their bankruptcy cases. Rule 1015 of the Federal Rules of Bankruptcy Procedure provides for joint administration of related bankruptcy cases. Rule 1015(b) provides, in pertinent part as follows:

> (b) CASES INVOLVING TWO OR MORE RELATED DEBTORS. **If…two or more petitions are pending in the same court by** or against…(2) a partnership and one or more of its general partners, or (3) two of more general partners, or (4) **a debtor and an affiliate, the court may order joint administration of the estates**…

Fed. R. Bankr. P. 1015(b) (emphasis added). The term affiliate is defined in the Bankruptcy Code, and includes parents and subsidiaries of the debtor, as well as entities that operate, or are operated by, the debtor. See 11 U.S.C. § 101; Collier on Bankruptcy, ¶ 1015.03 (15th ed. rev. 1998).

Joint administration is an administrative and procedural device. See, e.g., Reider v. FDIC (In re Reider), 31 F.3d 1102, 1109 (11th Cir. 1994). It is distinct from substantive consolidation, and does not involve the substantive rights of creditors of the estates. See id.; Fed. R. Bankr. P. 1015, Advisory Committee Note (1983).

As set forth in Collier on Bankruptcy, an order authorizing joint administration contemplates the following relief:

> (1) combining the estates by using a single docket for administrative matters, including a listing of claims filed, and the filing, lodging and docketing of pleadings and orders;
> (2) the combining of notices to creditors and parties in interest;
> (3) the scheduling of hearings;
> (4) joint financial reporting by the debtors;
> (5) the joint and several liability of the estates of administrative expenses; and
> (6) the joint handling of other administrative matters.

See Collier on Bankruptcy, Forms 8.92-1, 8.92-4, and 8.92-5, reprinted in Collier on Bankruptcy (15th ed., rev. 2001); Fed. R. Bankr. P. 1015, Advisory Committee Note (1983).

**B.    Joint Administration Is Justified And Will Benefit The Estate.**

Several bases warrant the Court's exercise of its authority under section 105(a) of the

Bankruptcy Code to order joint administration of the Debtors' cases. Debtors' cases present the classic situation for joint administration. Round Table anticipates that numerous similar, if not identical, applications, motions, and orders will be involved in the Debtors' cases.

Joint administration will expedite the administration of the Debtors' cases and reduce administrative expense without prejudicing creditors' substantive rights. The Debtors are affiliated companies and have many common creditors. Hence, most motions filed in these cases will relate to more than one Debtor. Absent joint administration, parties will be required to file sets of papers that will often be identical, apart from the captions, and creditors will receive multiple copies of such papers, leading to inevitable creditor confusion. Joint administration will allow creditors to receive notice of all matters relating to Round Table, thereby ensuring that creditors are informed of matters potentially affecting their claims, without the burden of unnecessary and expensive duplication.

Because each creditor may file a claim against a particular Debtor, joint administration will not adversely impact any creditors' rights. In fact, the cost savings of joint administration will benefit all creditors by increasing the amounts ultimately available for distribution.

Joint administration will relieve the Court of the burden of entering duplicative orders and maintaining duplicative files. Similarly, joint administration will simplify the administrative burden of the Office of the United States Trustee's supervision of these chapter 11 cases.

In addition, Round Table has always prepared combined financial reports, and combined its accounting services. To require separate financial reporting through the chapter 11 process would be unduly burdensome and would create unnecessary administrative costs. Allowing combined reporting in no way prejudices the rights of creditors because Round Table's books and records are maintained in such a way that separate financial reports can be prepared where needed.

Accordingly, Round Table submits that joint administration of these chapter 11 cases is in the best interests of the Debtors' respective estates. Joint administration will eliminate unnecessary and expensive duplication of effort by the Debtors, their respective professionals, their respective creditors, parties in interest, and this Court.

Finally, Round Table proposes that Debtors' estates be jointly liable for professional fees and costs such that all fees and expenses be charged to the main case and only one joint fee application need to be filed by any professional. Because most matters affect the Debtors jointly, it would be extremely difficult and create a large administrative burden to attempt to allocate fees and expenses between the Debtors.

## VI. CONCLUSION

**WHEREFORE**, Round Table prays that the Court enter an order authorizing joint administration of the Debtors' estates, including that:

1. The Chapter 11 cases of Round Table Pizza Inc., The Round Table Franchise Corporation, Round Table Development Company, and Round Table Pizza Nevada LLC, shall be jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

2. Joint administration of the cases shall include, without limitation, the following:
    (a) The use of a single docket (In re Round Table Pizza Inc.) for administrative matters, particularly for the filing, lodging and docketing of pleadings and orders;
    (b) Combined notices to creditors and parties in interest;
    (c) Combined scheduling of hearings;
    (d) The use of a combined caption, in the form of the caption used hereon;
    (e) Combined financial reporting by Debtors;
    (f) The Joint and several liability of the estates to allow for professional fees and costs such that all professional fees and costs shall be charged only to the main case and only one joint fee application need be filed by any professional; and
    (g) The joint handling of other administrative matters.

///
///
///

3. Notice of joint administration of the estates shall be separately filed and docketed in each of the Debtor's cases, and shall be served on all creditors and parties-in-interest in each case substantially in the form of the proposed notice attached as Exhibit A to the Motion; and

4. For such other relief as the Court deems just and proper.

DATED: February 9, 2011                Respectfully submitted,

                                       MCNUTT LAW GROUP LLP


                                       By:      /s/ *Scott H. McNutt*
                                                Scott H. McNutt
                                                Proposed Attorneys for Debtors